NORMANOCH ASSOCIATION, INC., A CORPORATION, PLAIN-
TIFF-APPELLANT, v. HERMAN S. DEISER, *ET AL.*, DE-
FENDANTS-RESPONDENTS.

Argued January 21 and 22, 1963—Decided May 6, 1963.

*Mr. Frank G. Schlosser* argued the cause for plaintiff-appellant.

*Mr. Douglas C. Baker* argued the cause for defendants-respondents.

The opinion of the court was delivered by

HANEMAN, J. This is the third installment of the Culvers Lake trilogy. See *Baker v. Normanoch Assn., Inc.*, 25 *N. J.* 407 (1957), *Normanoch Association v. Baldasanno*, 40 *N. J.* 113 (1963). All three matters deal with some facet of the title to the bed of Culvers Lake and the right to use the waters thereof for sundry purposes. Although *Baldasanno* and the present matter were tried concurrently, the appeal in *Baldasanno* was first ready for argument. After oral argument, we retained *Baldasanno* until the matter *sub judice* was ready for our consideration, as it was inferred that both cases raised some common questions of law and fact. With consent of counsel, the proofs in the *Baker* case were made applicable to this case.

Here, as in *Baldasanno*, Normanoch sought to enjoin the defendants from using and maintaining a dock which extends into Culvers Lake in front of the high land that defendant indisputably owns, and from drawing water, boating, bathing, fishing, iceboating, iceskating, and otherwise using the bed or waters of Culvers Lake contiguous to their property. Normanoch as well sought a mandatory injunction requiring the defendants to demolish said dock. Additional elements of relief originally demanded have been abandoned.

After plenary trial, the court concluded that Normanoch had not proved its title to the lake bottom in front of the Deisers' lands. The Deisers thereupon were permitted to amend their pleading by filing a counterclaim which sought an adjudication of the title to those inundated lands, relying upon the evidence already adduced at the trial. Judgment was entered dismissing the complaint and sustaining the Deisers in their claim of title under the counterclaim. Normanoch appealed to the Appellate Division. Before argument there we certified the appeal on our own motion. *R. R.* 1:10–1(a).

The issue with which we are confronted is the title to the subaqueous lands in that portion of Culvers Lake, adjacent to the high land of the Deiser lots, which is commonly known as Meyer's Cove. As will more particularly appear hereafter, the solution of the problem lies in the location of the lake shore in 1905, the year in which Asher E. Snook, the then owner, caused a subdivision plotting to be made of acreage owned by him.

██ Because of the manner in which this question arises, the action is akin to an action in ejectment. As in ejectment, the plaintiff must prove that he is the owner of the lands involved. To establish a *prima facie* case, the plaintiff must demonstrate possession of the lands in question by himself or by someone from whom his title is derived, or he must trace a valid paper title to an acknowledged owner or to an authority having power to transmit title. *Rollins v. Atlantic City R. R. Co.*, 70 *N. J. L.* 664 (*E. & A.* 1904); *Troth v. Smith*, 68 *N. J. L.* 36 (*Sup. Ct.* 1902).

We shall first consider the Normanoch proofs.

█ Normanoch attempted to prove that John and Dolores Stehr, its immediate grantors of title to the submerged acreage which bordered the Deisers' high land, had maintained possession of these lands while they held title to them. Proof was elicited that the Stehrs had dredged out a cove in the vicinity of the subaqueous lands in question, and Normanoch asserts that this dredging indicated sufficient possession to establish its *prima facie* title. However, the testimony reveals that the Stehrs had not dredged any of the area fronting the Deisers' property. Therefore, possession of that area was not proved. Normanoch consequently must trace its paper title to a grantor with the authority to transmit valid title, in order to establish a *prima facie* case.

Normanoch contends that it is vested with title through either of two chains, both of which originate with the Council of Proprietors of the Eastern Division of New Jersey (Proprietors). One chain, under which both Normanoch and the Deisers claim title, stems from a grant by the Proprietors of

Great Lot 46 of the Sussex Allotments to John Rutherfurd, surveyed by Deputy Surveyor Richard M. Lawrence on July 21, 1828, and the second chain stems from a conveyance of the lake bed by the Proprietors to Nathaniel Niles on September 1, 1882. The lands here involved fall within the confines of the Rutherfurd grant and outside of the Niles conveyance which does not encompass this section of Meyer's Cove. Niles, therefore, obtained no title to the lands in question by virtue of the Proprietors' deed to him. See *Normanoch Association v. Baldasanno, supra.* It follows that Normanoch as well obtained no title from this source.

We proceed then to the Rutherfurd chain as proved by Normanoch. When John Rutherfurd, the original grantee of the Proprietors, died, title to a portion of Lot 46 vested in his grandson, also named John Rutherfurd, by virtue of a deed from Mary Rutherfurd, Executrix of John Rutherfurd, dated April 22, 1853. The description in the deed reads, in part:

"Beginning at the intersection of the Southeast line of said No. 46 with the center of the Turnpike Road; thence (1) along the middle of the turnpike road North 32 degrees and a half West 13 chains and 50 links, thence (2) North 23 degrees and a half West 29 chains, thence (3) North 27 degrees and 3 quarters East 27 chains, thence (4) North 4 degrees and a quarter West 85 links to the edge of round pond, thence (5) along the same North 53 and a quarter degrees East 1 chain and 18 links, thence (6) along the shore of said pond Southeasterly following the several courses thereof to a stake in the said Southeast line of No. 46 thence along the same South 46 degrees West 24 chains and 20 links to the place of beginning. Containing 131 acre and 45/00 of an acre."

John Rutherfurd and his wife conveyed the premises with an identical description to Stephen H. Condict. By mesne conveyances these lands vested in Robert H. Duncan by a sheriff's deed dated June 29, 1897. When Robert H. Duncan died, his devisees conveyed the lands so described to Asher E. Snook on January 12, 1905 who, in turn, over the years, conveyed various separate lots out of the tract, including "Lot #8 in Block W" which was conveyed to Stephen M. Case on April 26, 1921, and which ultimately vested in the Deisers. Upon

Snook's death, his heirs conveyed certain parcels of land still remaining vested in him to Christopher Snook by deed dated July 28, 1936. A part of the lands so conveyed was described as "all the swamp lands or lands lying under water owned by the said Asher E. Snook or in which the said Asher E. Snook had any interest therein whatsoever at the time of his death and as lie Northeast of said State Highway #S31 and Northwest of the shore line of property fronting on Myrtle Avenue as shown on the aforementioned map." The map referred to was entitled "West Side Villa Sites, Culvers Lake, Frankford Twp., Sussex County, New Jersey, development of Asher E. Snook, Paul B. Haines, L. S. 1929." Although this map was not produced at trial it is admitted that the description encompassed Meyer's Cove and that it was intended to convey so much thereof as remained vested in Asher E. Snook at his death. It is also undisputed that such title as Asher E. Snook retained in the lake bed fronting the Deiser property ultimately vested in Normanoch by mesne conveyances originating with the conveyance to Christopher Snook of Asher Snook's remaining interests in all swamp and underwater lands and terminating with the deed to John and Dolores Stehr. The mesne conveyances contain some exceptions and additional descriptions which do not concern us.

Normanoch submitted, with the foregoing proof of title, a map at a scale of 400 feet to the inch prepared by Snook (no close relative of Asher E. Snook) and Hardin from an actual survey run in 1955, delineating the complete shoreline of Culvers Lake as it existed in that year. Also introduced by Normanoch, with more detailed information, was a map of a limited portion of Culvers Lake, at a scale of 100 feet to the inch, prepared by Snook-Hardin from a survey of the southerly shore of Meyer's Cove, run by them in 1959. It is not disputed that the location of this shoreline adjacent to the Deiser lot as shown by the 1955 survey is identical with the 1959 survey. For convenience we shall hereafter refer only to the 1959 map.

Protracted on the 1959 map are the submerged lake lands, described in the 1936 Christopher Snook conveyance, which eventually vested in Normanoch, and the Deisers' lot, as described in the 1921 deed to Stephen M. Case, the original grantee, from Asher E. Snook. The deed to Case called for the lake shore as one of the lot boundaries. This plotting shows the Deiser land as terminating at the 1959 lake shore and the Normanoch land as immediately adjacent thereto, encompassing the submerged lands in front of the Deiser lot.

██ As stated in more detail below, there is a presumption in favor of the permanence of natural boundary lines. *Normanoch Association v. Baldasanno, supra,* and cases cited therein. Thus, Normanoch established that title to the submerged lands immediately adjacent to the present shore at the Deiser lots remained vested in Asher E. Snook at his death in 1935 and that Normanoch succeeded thereto. Normanoch thereby proved *prima facie* title to the lands here involved.

The Deisers, at this posture of the trial, were confronted with the problem of proving either that title to the underwater lands in front of their property which was claimed by Normanoch, was vested in some third person or in themselves. *Normanoch Association v. Baldasanno, supra.* They proceeded to attempt to establish the superiority of their own title.

As above noted, the Deiser and Normanoch chains of title are identical up to and including the conveyance by Duncan of the 131.45-acre tract to Asher E. Snook. Asher E. Snook apparently retained Andrew H. Konkle in 1905 to survey the lands thus acquired by him and to plot a subdivision of a portion of such lands. Konkle was a prominent engineer in Sussex County who died in 1927 at the age of 83. For many years he had been the county engineer.

On April 26, 1931 Asher E. Snook and his wife conveyed a lot to Stephen M. Case by the following description:

"Being Lot No. Eight (8) in Block W as shown on extended map of Asher E. Snook's land entitled 'Map of West Side Villa Sites.' Beginning at a stake distant three hundred and fifty feet south

sixty degrees and thirty minutes west from the westerly line of Lake View Avenue, thence from said beginning running on the northwest line of Myrtle Avenue, (1) South sixty degrees and thirty minutes west fifty feet, thence on a line parallel with Lake View Avenue, (2) North twenty seven degrees west three hundred and seventy nine feet more or less to the shore of Culver's Lake, thence (3) Along the shore of the lake in a northeasterly direction to a line that is parallel with the second line hereof and distant forty nine and ninety five hundredths feet therefrom measured at right angles, thence on said parallel line, (4) South twenty seven degrees east three hundred and eighty feet more or less to the place of beginning. Containing nineteen thousand square feet of land, be the same more or less."

It is the Konkle subdivision map to which the deed refers. Although that map had been filed in Sussex County Clerk's Office, it has since disappeared and was not available at the time of trial. Deiser's engineer, Williams, however, produced a copy of a map entitled, "Map of West Side Villa Sites. Culvers Lake. New Jersey Highlands—Frankford Township, Sussex Co., New Jersey. For sale by Asher E. Snook—1905 —Extended, with slight change in location of Summit Ave.—1908—Scale: 100 ft. equal 1 inch. A. H. Konkle, C. E. Newton, N. J." (Konkle-Snook map), which was admitted as an exhibit by consent of the parties at argument before this court. It is undisputed that the lands in the vicinity of the Deisers' lot and their relation to what purports to be the shore of the lake are identically shown on the 1905 and 1908 maps. As will be discussed below, it is the shoreline of the lake as it existed in 1905 in front of Lot 8 of Block W which is determinative of the *quantum* of land that was conveyed to Case in 1921.

By mesne conveyances, containing the same description, title to said lot became vested in defendants Deiser.

■■ It is undisputed that the deed description was prepared from the Konkle-Snook map. Furthermore, the reference to that map had the effect of incorporating it in the deed. A grantee, where there is no conflict between the specific description in the deed and a map referred to therein, takes title to the lands as they are so identified by both instruments. *Lambert v. Vare*, 88 *N. J. Eq.* 81 (*Ch.* 1917), aff'd 89 *N. J.*

*Eq.* 211 (*E. & A.* 1918) ; *Lehigh & H. R. Ry. Co. v. Antalics,* 81 *N. J. L.* 685 (*E. & A.* 1911) ; 6 *Thompson, Real Property* § 3052 (*rev. ed.* 1962).

The deed description is no aid in ascertaining the positive location of the shore in 1905 since the call is for approximate distances from Myrtle Avenue, *i. e.,* "379 feet, more or less" and "380 feet more or less." Therefore, reference must be had to the Konkle-Snook map for that purpose. Block W as shown thereon is bounded on the east by Lake View Avenue, on the west by Laurel Street, on the south by Myrtle Avenue and on the north by "Shore of Lake." The lots are numbered from 1 to 14, commencing at Lake View Avenue. Lots 1 through 6 have definite sideline distances shown from Myrtle Avenue to the lake shore. Lot 7 with a width of 50 feet has no such distance shown on its westerly sideline adjoining lot 8. Lot 8 with a width of 50 feet has no such distance shown on either sideline. Lot 9 with a width of 80 feet has no such distance shown on its easterly sideline adjoining lot 8. Thus, for 50 feet to the east and 80 feet to the west of lot 8, or a total of 180 feet, the distance between Myrtle Avenue and the shore is not shown. Lots 10 and 11 have definite sideline distances shown from Myrtle Avenue to the shore. Lot 12 has no such distance shown on its easterly sideline. Lot 13 has neither sideline distance shown. Lot 14 has shown only the westerly sideline, which is coincident with the easterly line of Laurel Avenue. No reason is furnished for the foregoing omissions. Perhaps none can be presently discerned. The sidelines of lot 8, however, scale approximately 331 and 354 feet respectively between Myrtle Avenue and the line delineating the shore. These figures are respectively 48 feet and 26 feet less than the approximate calls of 379 and 380 feet in the deed. Consequently, we are unable to determine the exact location of the shore in front of the Deiser lot as it existed in 1905 from either the deed description or the Konkle-Snook map.

To add to the difficulty of positive location of that shoreline, we have no proof by survey or otherwise as to where the

shoreline was located in 1905, or whether the waters in Meyer's Cove covered the same area in 1905 as in 1960. The closest hint to an answer to these questions is given by the field notes of a survey made by Konkle in 1884 for Nathaniel Burtis. These field notes of Konkle, as well as those of a survey made for Asher E. Snook in 1905, were admitted over Normanoch's objection. Assuming without deciding that the Konkle notes and surveys for Burtis and Snook were admissible into evidence pursuant to both common law principles, see *Curtis v. Aaronson,* 49 *N. J. L.* 68, 75, *et seq.* (*Sup. Ct.* 1886) ; *Horner v. Stillwell,* 35 *N. J. L.* 307, 310 (*Sup. Ct.* 1871) ; 5 *Wigmore, Evidence* §§ 1565, 1567, and the uniform business records as evidence act, *N. J. S.* 2A:82-34, *et seq.,* we proceed to determine the amount of assistance they render to the Deisers in their attempt to dispute Normanoch's *prima facie* case.

On January 30, 1884, Konkle's notes disclose a survey of the 131.45-acre tract run for N. W. Burtis, who became the owner thereof by deed dated June 23, 1886 and recorded March 3, 1891. Konkle's field notes of this survey disclose that the cove was then approximately one-half of its present size and did not extend to the Deisers' lot. The Konkle notes, even if admissible, are therefore of no aid to the Deisers in sustaining their claim of title.

The first accurately surveyed location of the shoreline of Meyer's Cove bordering the Deisers' lot is that furnished by Normanoch in 1959. Where a deed contains a call for a natural monument which is the shoreline of a river or lake, and no definite distances to such boundary from a given point are recited, and no survey of the actual location of the shoreline has been made, and an actual survey is subsequently run, there is a presumption that the line as delineated by the survey has existed in such conformation and has continued unchanged from the date of the original deed. *Normanoch Association v. Baldasanno, supra.* The presumption arising from this proof, therefore, is that the shoreline existed in 1905 as shown on the 1959 map.

 Relating the facts of the case *sub judice* to the foregoing expressed presumption, it is apparent that the Deisers have not located the shore in a position sufficiently contiguous to their lot as to overcome the said presumption arising from the first available accurate shore location which is shown on Normanoch's 1959 map. Thus, the Deisers have failed to establish their title to any portion of the present lake bed in front of lot 8.

But, say the Deisers, the third line in the Mary Rutherfurd to John Rutherfurd deed which reads "North 27 degrees and 3 quarters East 27 chains" proceeds in an erroneous direction. For this contention they rely upon Konkle's 1884 field notes. The Konkle notes of that survey, as far as here pertinent, read:

"N. B. The 2nd course above viz. N. 30° 30' E. was run from Deed but I think there was a mistake in the course given in the deed. The deed reads as follows. (3) N. 27¾° E. 27.00 (4) N. 4¼° W. 85 lks to the edge of the Round pond thence along the same (5) N. 53¼° E. 1.18, thence along the shore of the pond the several courses. Now if the course of N. 30° 30' E. (being the course of N. 27¾° E. with variation added) is continued 27. chs will carry the point a way out in the pond which cannot be correct. But if the courses of N. 27¾° E. had been N. 47¾° E. and variation added would now be N. 50° 30' E. 27 chs then N. 1° 30' W. 85 lks thence N. 56° E. 1.18 would bring the point out at or near the 6th cor. of the above survey and would tally with the description in the deed and by so doing will take from the computation of above survey 8[65] Acres.

| Computation of above | 142[23] Acres | Deduct for over- | From 133[58] A. |
|---|---|---|---|
| Deduct | 8[65] | plus along the | |
| | ——— | shore of pond | .86 |
| | 133[58] Acres | | ——— |
| | | | 132.72 Acres |

Deed says 131[45] A. (132[22] noted)."

Parenthetically, whether he is referring to the description in the Rutherfurd deed or some deed of a later date, Konkle

does not designate with particularity. This is important, as the amount of the compass variation in 1884 would depend upon the year when the alleged error occurred. We cannot, therefore, assay the accuracy of his compass variations. It is also to be noted that, although Konkle commented upon the possibility of error, he ran the third course of the description in the original direction, i. e., "27¾° east" and not according to his corrective suggestion.

It is unnecessary, however, to decide whether there was a 20 degree error in that description or whether the stated distance of "27 chains" should have been "20.77 chains." With the admission, for the purpose of these conclusions alone, that there was a 20-degree error, the protraction of the alleged corrected line by Deiser's engineer, Williams, upon the Snook-Hardin 1959 map, exhibits that in 1959 there was an area of submerged land even between *that* line and the shoreline in front of their property. Since, as above stated, we are bound by the 1959 shoreline, it is apparent that even upon Deiser's theory, Normanoch's title included the underwater lands which are presently being used by the Deisers.

Normanoch's proof of *prima facie* title to the submerged lands immediately adjacent to lot 8 remains unshaken. By the same token, the Deisers have failed to establish their title to such lands.

Reversed and remanded for entry of judgment consistent with the foregoing. No costs.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.